**J. Mark Chevallier**
**State Bar No. 04189170**
**ROCHELLE MCCULLOUGH PLLC**
**901 Main Street, Suite 3200**
**Dallas, Texas 75202**
**Telephone: (214) 953-0182**
**Facsimile: (888) 467-5979**
**Email: mchevallier@romclaw.com**

**COUNSEL FOR DEBTOR,**
**WHITESTONE CROSSING AUSTIN, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.: 25-31768-sgj11 |
| WHITESTONE CROSSING AUSTIN, LLC, | § | |
| | § | In Proceedings Under Chapter 11 |
| Debtor. | § | |

---

# AMENDED PLAN OF REORGANIZATION FOR WHITESTONE CROSSING AUSTIN, LLC

---

# ARTICLE I

## INTRODUCTION

Whitestone Crossing Austin, LLC, the debtor and debtor-in-possession in the above-referenced case (the "**Debtor**"), proposes this *Amended Plan of Reorganization* (the "**Plan**") for the reorganization of its business and resolution of the outstanding Claims against it, and Interests in it, under Chapter 11 of the Bankruptcy Code.

Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, events during the Chapter 11 Case, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

1.1. **Background of the Debtor**. The Debtor is engaged in the residential real estate business within Williamson County, Texas. The Debtor owns and operates a 120-unit apartment building located at 1201 West Whitestone Boulevard, Cedar Park, Texas 78613 (the "**Property**"). The Property is the principal asset of the Debtor and its sole source of income.

On May 12, 2025 (the "**Petition Date**"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor has remained a debtor-in-possession during the pendency of this Chapter 11 Case and now moves to reorganize.

1.2. **Summary of the Plan**. The Plan is a liquidating plan proposed by the Debtor to sell the Property in an orderly process seeking to maximize the purchase price and using the proceeds of that sale to pay the Claims in the case in the order of priority provided by the Bankruptcy Code. In general, the Plan provides as follows:

(a) **Sale of Property.** With the assistance of the Debtor's Court Approved Real Estate Agent, Walker & Dunlop Investment Sales, LLC ("Walker Dunlop") the Debtor has marketed the Property extensively and has identified a select group of interested buyers. This prospective buyer list will be worked to arrive at the highest and best offer for the Property which will be incorporated into the Sale Contract. The Plan seeks approval of the Sale Contract and upon approval of the Sale Contract as part of the Confirmation Order, the Debtor will proceed to close the Sale Contract on the Effective Date of the Plan. The Property will be sold free and clear of any liens, claims or encumbrances with any such liens claims or encumbrances attaching to the proceeds of the sale in their respective order of priority. The proceeds of the sale will be used to pay Allowed Claims as provided herein. If all Allowed Claims are paid, any remaining proceeds from the sale will be distributed to the Interest Holders of the Debtor as provided in the

Debtor's Operating Agreement.

(b) **Wind Up of the Business of the Debtor**. Following the sale of the Property and payment of Allowed Claims and any distribution to Interest Holders, the Reorganized Debtor will wind up the business of the Debtor.

## ARTICLE II

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A. Defined Terms

2.1. "**Administrative Expense Claim**" means any claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Debtor's Estate and operating the Debtor's business, including wages or salaries for services rendered after the Petition Date and through the Plan Effective Date, claims under section 503(b)(9) of the Bankruptcy Code, any Professional Claim approved for payment by the Debtor's Estate to the extent allowed under sections 330 or 503 of the Bankruptcy Code, all fees and charges assessed against the Debtor's Estate under section 1930 of chapter 123 of title 28 of the United States Code, and all Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court (under section 546(c)(2)(A) of the Bankruptcy Code or otherwise).

2.2. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.3. "**Allowed**" means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Plan Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, pursuant to section 502 of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection or dispute has been determined in favor of the Holder of the Claim or Interest by a Final Order, (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor or the Reorganized Debtor, (c) as to which the liability of the Debtor or the Reorganized Debtor, as applicable, and the amount thereof is determined by a Final Order of a court of competent jurisdiction, or (d) expressly allowed hereunder; provided, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to (and shall not exceed) all limitations or maximum amounts permitted set forth in the Bankruptcy Code, including sections 502, 503 or 510 of the Bankruptcy Code, to the fullest extent applicable, and (y) the Reorganized Debtor shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

2.4. "**Assumed Contracts Schedule**" means that certain schedule of assumed Executory Contracts and Unexpired Leases attached as an exhibit to the Plan Supplement.

2.5. "**Bankruptcy Case**" means the above-captioned voluntary chapter 11 case commenced by the Debtor on the Petition Date.

2.6. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101- 1532.

2.7. "**Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Case.

2.8. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time and as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court.

2.9. "**Bar Date**" means the deadline by which a Claim must have been timely filed. The general Bar Date is September 16, 2025, as to Creditors with prepetition Claims and is November 10, 2025, for Governmental Units.

2.10. "**Business Day"** means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in Texas are required or authorized by law to remain closed.

2.11. "**Cash**" means legal tender of the United States of America and equivalents thereof.

2.12. "**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertible, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including without limitation: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

2.13. "**Claim**" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

2.14. "**Class**" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

2.15. "**Confirmation**" means the entry of the Confirmation Order on the docket of the Bankruptcy Case.

2.16. "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021.

2.17. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order, as such hearing may be continued from time to time.

2.18. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.19. "**Consummation**" means the occurrence of the Plan Effective Date.

2.20. "**Cure**" means a Claim (unless waived or modified by the applicable counterparty) for cure of Debtor's default under an Executory Contract assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

2.21. "**Debtor**" means Whitestone Crossing Austin, LLC, a Texas limited liability company.

2.22. "**Disallowed**" means with respect to any Claim or Interest, such Claim or Interest or portion thereof that (i) has been disallowed or expunged by a Final Order or by a specific provision of the Plan, or (ii) has been agreed to by the Holder of such Claim or Interest and the applicable Debtor to be equal to $0 or to be expunged.

2.23. "**Disclosure Statement**" means the disclosure statement for the Plan, including any exhibits, appendices, schedules, ballots, and related documents thereto, as amended, supplemented or modified in accordance with applicable law, and any procedures related to the solicitation of votes to accept or reject the Plan.

2.24. "**Disputed**" means, with respect to any Claim or Interest, a Claim or Interest that is not yet Allowed, including (a) any Proof of Claim or request for payment of an Administrative Expense Claim filed after the Plan Effective Date or the deadline for filing Proofs of Claim based on the Debtor's rejection of Executory Contracts, and (b) any Claim that is subject to an objection or a motion to estimate, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court.

2.25. "**Distribution Date**" means, except as otherwise set forth herein, the date or dates determined by the Debtor, on or after the Plan Effective Date, upon which the Reorganized Debtor shall make distributions to Holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

2.26. "**Distribution Record Date**" means the Confirmation Date.

2.27. "**Entity**" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

2.28. "**Estate**" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Bankruptcy Case.

2.29. "**Exculpated Party**" means, collectively, (a) the Debtor; (b) the Debtor's Professionals; (c) the official committees appointed in the Bankruptcy Case (if any) and each of their respective members and any Professional; and (d) with respect to each of the foregoing, such Entities' current officers, managers, directors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, and other

professionals, and such persons' respective heirs, executors, estates, servants and nominees.

2.30. "**Executory Contract**" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

2.31. "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022 closing the Bankruptcy Case.

2.32. "**Final Order**" means, as applicable, an order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction or governmental authority, as applicable, which has not been reversed, vacated or stayed and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing will then be pending, or as to which any right to appeal, petition for certiorari, or motion to reargue or rehear will have been waived in writing in form and substance satisfactory to the Debtor, or on and after the Plan Effective Date the Reorganized Debtor, or in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court, or other court of competent jurisdiction (as applicable) will have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing will have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state or provincial court rules of civil procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

2.33. "**General Unsecured Claim**" means any Claim against the Debtor as of the Petition Date, other than an Administrative Expense Claim, a Priority Claim, a Secured Tax Claim, a Lument Secured Claim, or a Judgment Secured Claim.

2.34. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

2.35. "**Holder**" means the beneficial holder of a Claim or Interest.

2.36. "**Impaired**" is used to describe a Claim or an Interest that is not Unimpaired.

2.37. "**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

2.38. "**Interest**" means any limited liability company interest, equity, ownership, profit interest, unit, or share in the Debtor.

2.39. "**Judgment**" means the state court judgment entered against the Debtor prior to the Petition Date in Case Number 22-1934-C425 in the 425th Judicial District Court in Williamson County, Texas.

2.40. "**Judgment Secured Claim**" means, with respect to Claims, Claim No. 5-1 filed against the Debtor arising from the Judgment.

2.41. “**Lien**” means a “lien” as such term is defined in section 101(37) of the Bankruptcy Code.

2.42. “**Lument**” means LFT CRE 2021-FL1, Ltd., an exempted company incorporated under the laws of the Cayman Islands, acting by and through Lument Real Estate Capital LLC.

2.43. **“Lument Exit Fee”** means an exit fee of 2% of the principal balance of the Lument Loan on the Effective Date.

2.44. **“Lument Payoff”** means a payment to Lument on the Effective Date of the Plan in the greater of (i) the principal amount then due, plus all accrued interest due calculated at the contract rate as of the Effective Date, the Lument Exit Fee, and reasonable fees and expenses of Lument as provided by the Lument Loan Agreement subject to the provisions of Section 506(b) of the Bankruptcy Code; or (ii) such amount as may be agreed by and between the Debtor and Lument.

2.45. “**Lument Secured Claim**” means, with respect to Claims, a Claim arising against the Debtor as of the Petition Date as a result of the Loan from LFT CRE 2021-FL1, Ltd., an exempted company incorporated under the laws of the Cayman Islands, acting by and through Lument Real Estate Capital LLC, with a current principal balance of $13,666,720.50.

2.46. “**Person**” means an individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or entity, or the United States Trustee.

2.47. “**Petition Date**” means May 12, 2025, being the date on which the Bankruptcy Case was commenced.

2.48. “**Plan**” means this Chapter 11 plan as it may be amended, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

2.49. “**Plan Effective Date”** means the date upon which (a) no stay of the Confirmation Order is in effect and the Confirmation Order is a Final Order, (b) all conditions precedent to the effectiveness of the Plan have been satisfied or are expressly waived in accordance with the terms thereof, as the case may be, (c) the transactions to occur on the Plan Effective Date pursuant to the Plan become effective and are consummated, and (d) the substantial consummation (as defined in section 1101 of the Bankruptcy Code) of the Plan occurs.

2.50. “**Plan Supplement**” means one or more compilations of documents and forms of documents, instruments, schedules and exhibits to the Plan, as each such document, agreement, instrument, schedule and exhibit and form thereof may be altered, restated, modified or replaced from time to time, including after the filing of any such documents. Each such document, agreement, instrument, schedule or exhibit, or form thereof, is referred to herein as a “Plan Supplement.”

2.51. “**Priority Claim**” means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

2.52. "**Priority Tax Claim**" means any Tax Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

2.53. "**Professional**" means any Entity: (a) employed in the Bankruptcy Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Plan Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.54. "**Professional Claim**" means any Claim by a Professional for Professional Fees.

2.55. "**Professional Fees**" means the accrued, contingent, and/or unpaid compensation for services rendered, and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional.

2.56. "**Proof of Claim**" means a proof of Claim filed against the Debtor in the Bankruptcy Case.

2.57. "**Property**" means the real property located at 1201 West Whitestone Boulevard, Cedar Park, Texas 78613 and all affixed personal property associated with its use.

2.58. **"Purchaser"** means the party which enters into the Sale Contract with the Debtor following the conclusion of the marketing process.

2.59. "**Reinstated**" or "**Reinstatement**" means, with respect to any Claim, that the Claim shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default.

2.60. "**Rejection Claim**" means, with respect to Claims, a Claim arising against the Debtor as a result of the Debtor's rejection of an Executory Contract in accordance with Article V of the Plan.

2.61. "**Released Party**" means, collectively, each of the following in their respective capacities as such: (a) the Exculpated Parties and (b) with respect to each of the foregoing, such Entities' current officers, managers, directors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

2.62. "**Releasing Party**" means the Debtor and the Reorganized Debtor.

2.63. "**Reorganized Debtor**" means the Reorganized Whitestone Crossing Austin, LLC, as reorganized on the Plan Effective Date.

2.64. **"Sale Contract"** means a contract between the Debtor and the Purchaser pursuant to which the Property will be sold to the Purchaser free and clear of liens, claims and encumbrances.

2.65. "**Secured Claim**" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

2.66. "**Secured Tax Claim**" mean, with respect to Claims, any Tax Claim against the Debtor as of the Petition Date by a governmental taxing authority that is secured by an asset of the Debtor.

2.67. "**Securities Act**" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, or any similar federal, state, or local law.

2.68. "**Security**" has the meaning set forth in section 2(a)(1) of the Securities Act.

2.69. **"Tax Claims"** mean any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to §507(a)(8) of the Code, or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date.

2.70. "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

2.71. "**Unimpaired**" is used to describe a Class of Claims or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

2.72. "**U.S. Trustee**" means the Office of the United States Trustee for the Northern District of Texas.

## B. Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may

be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply other than section 102(5) of the Bankruptcy Code, which shall not apply herein; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Bankruptcy Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" and (l) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### C. Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

### E. Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F. Conflicts

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation

Order and the Plan, the Confirmation Order shall control.

## ARTICLE III

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND PROFESSIONAL CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Professional Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV of the Plan.

### A. Administrative Expense Claims

On the Plan Effective Date or as soon thereafter as such Allowed Administrative Expense Claim becomes due and payable according to its terms, Allowed Administrative Expense Claims shall be paid in full in Cash by the Reorganized Debtor from Cash on hand, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim.

### B. Professional Fees

Holders of Administrative Claims for Professional Fees shall file and serve applications for final allowance and payment of their Professional Claim no later than the first Business Day that is forty-five (45) days after the Plan Effective Date. Objections to any Professional Claim must be filed and served on the Reorganized Debtor and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Claim. A hearing to consider final fee application of a Professional, and any outstanding objections thereto, shall be scheduled for a date and time as the Bankruptcy Court directs.

From and after the Plan Effective Date, any requirement that a Professional comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### C. Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Reorganized Debtor: (a) payment in full of such Allowed Priority Tax Claim on the Distribution Date; or (b) treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, by payment in full amortized over forty (40) equal monthly installments (the "**Installment Period**"), with interest on such Allowed Priority Tax Claims after the Plan Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code,

beginning on the Plan Effective Date.

Such Installment Period payments shall commence on the first Business Day of the first month that is not less than thirty (30) days after the Plan Effective Date and shall continue to be paid on the first Business Day of each month thereafter. To the extent there is then any outstanding balance on an Allowed Priority Tax Claim, it shall be paid on the first Business Day of the sixtieth (60th) month following the Petition Date.

### D. Statutory Fees

On or before the Plan Effective Date, the Debtor shall have paid in full in Cash all fees due and payable pursuant to section 1930 of Title 28 of the United States Code. On and after the Plan Effective Date, the Reorganized Debtor shall timely pay all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee for each quarter (or portion thereof) that such Debtor's case remains open. The Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE IV

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Plan Effective Date. The Debtor reserves the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article IV.B of the Plan renders such Holder Unimpaired.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claims or Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote |
| 2 | Secured Tax Claims | Unimpaired | Not Entitled to Vote |
| 3 | Lument Secured Claim | Impaired | Entitled to Vote |
| 4 | Judgment Secured Claim | Impaired | Entitled to Vote |

| | | | |
|---|---|---|---|
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests | Impaired | Entitled to Vote |

## B. Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, will receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtor; and (b) the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, will receive such treatment on the Plan Effective Date or as soon as reasonably practicable thereafter.

4.1. **Class 1 – Other Priority Claims**

(a) *Classification.* Class 1 consists of the Other Priority Claims. For the purposes of classification and treatment under the Plan, "Other Priority Claims" means all Priority Claims not addressed or otherwise subject to treatment under Article III of the Plan

(b) *Treatment.* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the Reorganized Debtor, either:

i. payment in full in Cash; or

ii. other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D.

(c) *Voting.* Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

4.2. **Class 2 – Secured Tax Claims**

(a) *Classification.* Class 2 consists of the Secured Tax Claims.

(b) *Treatment.* Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for

each Allowed Secured Tax Claim, each Holder shall receive, at the option of the Reorganized Debtor, either:

i. payment in full in Cash; or

ii. other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D.

(c) *Collateral.* Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interests securing an Allowed Secured Tax Claim shall remain in full force and effect following the Plan Effective Date. To the extent necessary, the Debtor grants each such Holder of an Allowed Secured Tax Claim replacement liens and security interests in accordance with the Bankruptcy Code co-extensive with any pre-existing liens held by such creditor, with such replacement liens being automatically perfected without the need for further record filings.

(d) *Voting.* Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

4.3. **<u>Class 3 – Lument Secured Claim</u>**

(a) *Classification.* Class 3 consists of the Lument Secured Claim.

(b) *Treatment.* Except to the extent that a Holder of an Allowed Lument Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed Lument Secured Claim, each such Holder shall receive the Lument Payoff upon the closing and funding of the Sale Contract on the Effective Date.

(c) *Voting.* Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.4. **<u>Class 4 – Judgment Secured Claims</u>**

(a) *Classification.* Class 4 consists of the Judgment Secured Claims.

(b) *Settlement Payment.* The Class 4 Claimants will receive the cash sum of $467,500, paid upon the closing and funding of the sale Contract on the Effective Date, in full and final settlement of the Judgment and all Claims of any kind arising from or in connection with the Judgment (the "Judgment Settlement").

i. *Bankruptcy Rule 9019 Approval.* The Judgment Settlement set forth herein is a compromise of the liability established by the Judgment. Upon confirmation of the Plan and the occurrence of the Effective Date and payment being made as

set forth in this Class 4 treatment, the Judgment shall be fully discharged and the Holders of the Judgment Secured Claims shall execute a release of judgment in form acceptable to the Debtor and a Non-Disparagement Agreement reasonably acceptable to the Debtor and Reorganized Debtor. The Judgment Settlement is requested to be approved by the Court as part of the confirmation of the Plan in compliance with the provisions of Bankruptcy Rule 9019.

(c) *Voting.* Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

4.5. **Class 5—M&M Lien Holder Claims**

(a) *Classification.* Class 5 consists of the claim of Redi Carpet, Inc.

(b) *Treatment.* Except to the extent that a Holder of a M&M Lien Holder Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each M&M Lien Holder Claim shall receive:

i. payment in full in Cash on the Effective Date without any interest.

(c) *Voting.* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan

4.6. **Class 6 – General Unsecured Claims**

(a) *Classification.* Class 6 consists of the General Unsecured Claims.

(b) *Treatment.* Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive:

i. payment in full in Cash on the Effective Date without any interest.

(c) *Voting.* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.7. **Class 7—Interest Holders**

(a) *Classification.* Class 7 consists of the Interest Holders of the Debtor.

(b) *Treatment.* Holders of Interests shall retain their member interests in the Reorganized Debtor and shall receive a distribution on account of their

Interests from any net proceeds from the sale of the Property remaining after payment of all Allowed Claims..

(c) *Voting.* Class 6 is impaired under the Plan. Holders of Interests in Class 6 are entitled to vote to accept or reject the Plan.

## C. Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## D. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## F. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to the Plan. The Debtor will seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Impaired Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests

Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Plan Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### B. Sources of Plan Payments

5.1. **Source of Plan Payments**. The Reorganized Debtor shall make use of a combination of the Sale Contract proceeds and its cash on hand as of the Effective Date to make all required plan payments.

### C. Company Existence and Management

The Reorganized Debtor shall continue to exist after the Plan Effective Date as an Entity with all the powers of a limited liability company pursuant to the applicable law in the State of Texas, in which the Debtor is formed.

The Reorganized Debtor's operating agreements in effect prior to the Plan Effective Date shall continue in effect.

The manager of the Reorganized Debtor will be ____________________________.

### D. Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, on the Plan Effective Date, all property of the Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except the Liens specifically provided for by the Plan. On and after the Plan Effective Date, except as otherwise provided herein, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### E. Organizational Documents

The Reorganized Debtor does not anticipate amending its Organization Documents. After the Plan Effective Date, the Reorganized Debtor may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

**F. Effectuating Documents; Further Transactions**

On and after the Plan Effective Date, Reorganized Debtor and its managers and members are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the new organizational documents in the name of and on behalf of Reorganized Debtor without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**G. Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, any equity security, or other Interest in either the Debtor or the Reorganized Debtor; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral, if any, as security; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Assumption of Executory Contracts and Unexpired Leases**

Except as set forth herein, the Debtor will assume the Executory Contracts and Unexpired Leases set forth on the Assumed Contracts Schedule to the Sale Contract and assign such contracts

to the Purchaser with payment of any cure amounts due and payable thereunder payable by the Purchaser. The Sale Contract, which will include the Assumed Contracts Schedule, will be included in the Plan Supplement.

Any Executory Contract or Unexpired Lease not included in the Assumed Contracts Schedule to the Sale Contract shall be deemed Rejected. In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract, any Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor, as applicable, or the Estate of the Reorganized Debtor, properties or interests in property, unless a Proof of Claim is timely filed with the Bankruptcy Court and served upon the Reorganized Debtor. An Allowed Claim arising from rejection of Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim and paid according to the Plan.

Except as otherwise provided herein or agreed to by the Debtor or Reorganized Debtor, as applicable, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease will include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Any modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtor or the Reorganized Debtor during the Bankruptcy Case will not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

### B. Cure of Defaults and Objections to Cure and Assumption

The amount, if any, the Debtor believes necessary to cure any default under an Assumed Contract or Lease will be identified on the Assumed Contracts Schedule and included in the Plan Supplement. The Reorganized Debtor, as applicable, will pay any undisputed Cure on the Plan Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objections to the proposed assumption or rejection of an Executory Contract or Unexpired Lease, or to the Debtor's calculation of the amount necessary to Cure, must be filed and served on Reorganized Debtor within thirty (30) days after the latest of: (1) the date of entry of a Final Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Plan Effective Date. **Unless otherwise ordered by the Bankruptcy Court, any cure objection that is not timely filed will be disallowed and unenforceable against the Reorganized Debtor**

The Debtor shall be authorized to assume the Executory Contracts and Unexpired Leases on the Assumed Contracts Schedule, and assign such contracts and leases to the Purchaser who shall pay undisputed Cure amounts, as of the Plan Effective Date. Following the occurrence of the Plan Effective Date, Reorganized Debtor may resolve any disputed Cure amount without any further notice to or action, order, or approval of the Bankruptcy Court.

Any timely filed objection to a Cure amount will be scheduled to be heard by the Bankruptcy Court at a hearing date after the Confirmation Hearing, unless the parties otherwise agree. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely**

**object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will result in the full release and satisfaction of any Cure, Claim, or defaults, whether monetary or nonmonetary, including provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the Plan Effective Date.

### C. Contracts and Leases Entered Into After the Petition Date

Contracts and Leases entered into after the Petition Date by the Debtor and any Executory Contracts and Unexpired Leases assumed by the Debtor prior to the Plan Effective Date shall be performed by Reorganized Debtor in the ordinary course of business after the Plan Effective Date.

### D. Insurance Policies

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Plan Effective Date and closing of the Sale Contract the Debtor shall be deemed to have rejected all insurance policies covering the Property and any other insurance policies providing coverage for any liability or risks related to the Property.

### E. Reservation of Rights

Nothing contained in the Plan or the Plan Supplement will constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor have any liability thereunder.

## ARTICLE VII

## <u>PROVISIONS GOVERNING DISTRIBUTIONS</u>

### A. Distributions on Account of Claims and Interests Allowed as of the Plan Effective Date

Subject to the Debtor's or Reorganized Debtor's right to object to any Claim or Interest (other than any Claims that may be deemed Allowed under the Plan), and except as otherwise provided herein, or in a Final Order, or as otherwise agreed to by the Debtor or Reorganized Debtor, as applicable, and the Holder of the applicable Claim or Interest, on the Distribution Date, Reorganized Debtor will make distributions under the Plan on account of Claims and Interests Allowed as of the Distribution Record Date on the Plan Effective Date or as soon as practicable thereafter; *provided*, *however*, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case or assumed by the Debtor prior to the Plan Effective Date will be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. To the extent any Allowed Priority Tax Claim is not due and owing on the Plan Effective Date, such Claim will be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the Holder of such Claim or

as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

### B. Special Rules for Distributions to Holders of Disputed Claims and Interests

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.

### C. Delivery of Distributions

7.1. **Record Date for Distributions to Holders of Claims**. The Reorganized Debtor will be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.

7.2. **Distribution Process**. The Reorganized Debtor shall make or facilitate all distributions required under the Plan. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Plan Effective Date, shall be made to Holders of record as of the Distribution Record Date by Reorganized Debtor: (1) to the address of such Holder as set forth in the books and records of the Debtor (or if the Debtor has been notified in writing, on or before the date that is ten (10) days before the Plan Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtor's books and records, no Proof of Claim has been filed and the Reorganized Debtor has not received a written notice of a change of address on or before the date that is ten (10) days before the Plan Effective Date; or (3) on any counsel that has appeared in the Bankruptcy Case on the Holder's behalf. The Debtor and Reorganized Debtor, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

**7.3.** **Undeliverable and Unclaimed Distributions**. If any distribution to a Holder of an Allowed Claim or Interest is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtor or is cancelled pursuant to the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution for a period of three months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code

and such unclaimed distribution shall revest in the Reorganized Debtor. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary.

### D. Claims Paid or Payable by Third Parties

7.4. **Claims Paid by Third Parties**. A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor. To the extent the Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

### E. Setoffs

Except as otherwise expressly provided for herein, the Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Plan Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized Debtor of any such claims, rights, and Causes of Action that the Reorganized Debtor may possess against such Holder.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

### A. Disputed Claims Process

Except as otherwise provided herein, if a party files a Proof of Claim or Interest and the Debtor or Reorganized Debtor objects then the Claim or Interest subject to such Proof of Claim or Interest will be Allowed unless or until Disputed and disallowed by a Final Order or as otherwise set forth in Article VIII of the Plan. For the avoidance of doubt, the Plan does not create a requirement to file a Proof of Claim or Interest (or move the Bankruptcy Court for allowance) to be an Allowed Claim. Unless otherwise ordered by the Bankruptcy Court, **except as otherwise provided herein, or at the discretion of the Reorganized Debtor all Proofs of Claim or**

**Interest filed after the Plan Effective Date will be disallowed and forever barred, estopped, and enjoined from assertion, and will not be enforceable against the Reorganized Debtor, without the need for any objection by Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court.**

## B. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Plan Effective Date the Reorganized Debtor shall have the authority to (1) file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Plan Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Plan Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

## C. Duplicate, Satisfied, Amended, and Superseded Claims

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor as allowed by the Bankruptcy Court.

## D. Disallowance of Claims and Interests

All Claims and Interests of any Entity from which property is sought by the Debtor under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or Debtor, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or Reorganized Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

# ARTICLE IX

## <u>SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS</u>

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Plan Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property**

**shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Plan Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor prior to the Plan Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Plan Effective Date.**

**A. Releases by the Debtor**

**Notwithstanding anything contained in this Plan to the contrary, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and the Releasing Parties from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, that the Debtor or the Reorganized Debtor would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Furthermore, notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any Person or Entity under the Plan or any document, instrument or agreement executed to implement the Plan.**

**B. Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission occurring on or after the Petition Date and before the Plan Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have**

**constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**C. Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Plan Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**D. Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor, or any Entity with which the Reorganized Debtor has been or are associated, solely because the Reorganized Debtor was a debtor under Chapter 11, may have been insolvent before the commencement of the Bankruptcy Case (or during the Bankruptcy Case but before the Debtor were granted or denied a discharge), or has not paid a debt that is dischargeable in the Bankruptcy Case.

**E. Document Retention**

On and after the Plan Effective Date, Reorganized Debtor may maintain documents in accordance with their respective standard document retention policy, as may be altered, amended, modified, or supplemented by Reorganized Debtor.

## F. Reimbursement or Contribution

If the Bankruptcy Court allows or disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## G. Release of Liens

Except with respect to the Liens specifically provided for under the Plan, on the Plan Effective Date, any mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate will be fully released and discharged, and the Holders thereof will execute such documents as may be reasonably requested by the Debtor or Reorganized Debtor to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to the Reorganized Debtor.

# ARTICLE X

# CONDITIONS TO PLAN EFFECTIVE DATE

## A. Conditions Precedent to the Plan Effective Date.

It shall be a condition to the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B of the Plan:

i. the Confirmation Order shall be in form and substance reasonably acceptable to the Purchaser and shall expressly approve the Sale Contract and all of its terms and provide that the Property shall be transferred to the Purchaser in accordance with the Sale Contract free and clear of all liens, claims and encumbrances;

ii. the Bankruptcy Court shall have entered the Confirmation Order and such order shall be a Final Order;

iii. the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

iv. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan;

v. the Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

vi. there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying,

restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan.

**B. Waiver of Conditions Precedent**

The conditions to the Plan Effective Date set forth in Article X.A of the Plan may be waived, only if waived in writing by the Debtor and the Plan Funder without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C. Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to the Debtor, shall be deemed to occur on the Plan Effective Date.

**D. Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

**A. Modification of Plan**

The Debtor reserves the right to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein. After the entry of the Confirmation Order but prior to the Plan Effective Date, the Debtor may, subject to approval of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B. Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C. Withdrawal of Plan**

The Debtor reserves the right to withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Debtor withdraws the Plan, or if the Confirmation Date or

the Plan Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Bankruptcy Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

i. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

ii. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for payment of Professionals Fees authorized pursuant to the Bankruptcy Code or the Plan;

iii. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor(s) is party or with respect to which the Debtor(s) may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract that is assumed; and (c) any dispute regarding whether a contract is or was executory or expired

iv. ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

v. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Plan Effective Date;

vi. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Bankruptcy Case and (b) the Plan, the Confirmation Order, and contracts,

instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

vii. to enforce the Confirmation Order, including to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

viii. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Bankruptcy Case

ix. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

x. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

xi. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

xii. enter an order or Final Decree concluding or closing the Bankruptcy Case;

xiii. enforce all orders previously entered by the Bankruptcy Court; and

xiv. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Plan Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with the Debtor.

### B. Headings

All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### C. Additional Documents

On or before the Plan Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**D. Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in cash when due for each quarter (including any fraction thereof) until the Bankruptcy Case is converted, dismissed, or a Final Decree is issued, whichever occurs first. Notwithstanding anything else in the Plan to the contrary, (1) interest, if any, pursuant to 31 U.S.C. § 3717 shall be payable, and (2) the U.S. Trustee shall not be required to file any proof of claim for quarterly fees.

**E. No Interest or Attorneys' Fees**

Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date. No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by order of the Court.

**F. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Plan Effective Date.

**G. Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**H. Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Plan Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

## I. Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## J. Plan Supplement Exhibits

All exhibits and documents to be included in the Plan Supplement, if any, shall be incorporated into and made a part of the Plan as if set forth in full in the Plan. The Plan Supplement, if any, must be filed at least one week prior to the deadline for any objections to confirmation of the Plan. A copy of the Plan Supplement will be made available upon written request to the Debtor's Counsel and will be available on the Bankruptcy Court's website via PACER.

## K. Non-Severability

The provisions of the Plan (including its release, injunction, exculpation, and compromise provisions) are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

## L. Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

## M. Closing of the Bankruptcy Case

The Reorganized Debtor shall, promptly after the full administration of the Bankruptcy Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Bankruptcy Case.

## N. Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the

Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Respectfully submitted,

WHITESTONE CROSSING AUSTIN, LLC

**By**: */s/ Sairam Kota*

**Name**: Sairam Kota

**Title**: Manager & Authorized Bankruptcy Representative

J. Mark Chevallier
State Bar No. 04189170
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: (214) 953-0182
Facsimile: (888) 467-5979
Email: mchevallier@romclaw.com

**COUNSEL FOR DEBTOR,**
**WHITESTONE CROSSING AUSTIN, LLC**